**Michele STEINBERG, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE.**

**No. 92–5436.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 22, 1994.

Decided May 27, 1994.

</center>

James H. Lesar, Washington, DC, argued the cause and filed the briefs for appellant.

Charles F. Flynn, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys.

Before: MIKVA, Chief Judge, SILBERMAN and BUCKLEY, Circuit Judges.

Opinion of the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Before us is the adequacy of the responses of three subdivisions of the United States Department of Justice—the United States Attorney's Office for the District of Massachusetts ("Boston USA's Office"), FBI Headquarters, and the FBI's Boston Field Office—to appellant Michele Steinberg's request for documents under the Freedom of Information Act ("FOIA"). In granting summary judgment to the Department, the district court upheld the adequacy of the searches and the FBI's redaction of a number of documents pursuant to several of FOIA's exemptions. However, the court did not address specifically the adequacy of search of the Boston USA's Office.

Because we are left with considerable doubt as to the adequacy of the Boston USA's Office search, we remand that issue to the district court. In addition, we ask the district court to reexamine the FBI's reliance on FOIA exemption 7(D)—withholding of information to protect a confidential source—in light of the Supreme Court's recent decision in *Dep't. of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). We read *Landano* to require the government to make a more particularized showing of confidentiality than it did in this case—as the Department itself concedes. We affirm the district court's decision in all other respects: The FBI's search was adequate, its invocation of FOIA exemption 1 was proper, and its reliance on exemptions 2 and 7(C) is an issue not before us on appeal.

I. BACKGROUND

Appellant Michele Steinberg is a member of the Lyndon LaRouche political organization. She contends that the United States government and the KGB conducted a "disinformation campaign" to implicate LaRouche and his associates in the 1986 assassination of Swedish Prime Minister Olaf Palme. In an effort to expose the alleged campaign, Steinberg filed in 1989 FOIA requests with the Boston USA's Office, FBI Headquarters, and the FBI's Boston Field Office seeking release of *"any and all documents pertaining*

exchange for the difference between $35.25 and the market value of ADVO on whatever date the

district court determined to be the date of the breach.

*to and surrounding the United States government's release of and/or disclosure of evidentiary material and any other documents turned over to the Swedish Police or other Swedish authorities.*" Attached to the requests were copies of an affidavit in which Assistant United States Attorney John Markham stated that the government had disclosed to Swedish police certain notebooks containing references to the Palme killing. The notebooks had been seized from LaRouche's Virginia headquarters in 1986.

The Executive Office for United States Attorneys ("EOUSA") informed Steinberg that the Boston USA's Office had no records that were responsive to her request. According to EOUSA, any such documents that might be in existence had been turned over to the Loudin County, Virginia Sheriff's Office in aid of a state prosecution of LaRouche. The FBI did not immediately respond. In September 1990, Steinberg filed suit in district court against the Department of Justice ("the Department") challenging the adequacy of EOUSA's search and the FBI's failure to respond to her request. The FBI then responded, releasing 18 heavily-redacted documents from its headquarters. The FBI redacted the documents pursuant to FOIA exemptions 1, 5 U.S.C. § 552(b)(1) (classified material); 2, 5 U.S.C. § 552(b)(2) (matters relating solely to internal personnel rules and practices); 7(C), 5 U.S.C. § 552(b)(7)(C) (investigatory records compiled for law enforcement purposes that would constitute an unwarranted invasion of personal privacy); and 7(D), 5 U.S.C. § 552(b)(7)(D) (investigatory records compiled for law enforcement purposes that would disclose the identity of confidential sources). The FBI also withheld ten documents from its Boston Field Office that, while responsive to Steinberg's request, were duplicates of ones released from FBI headquarters.

Undaunted, appellant moved to compel further searches of the three offices and renewed an earlier request for a supplemental *Vaughn* index, *see Vaughn v. Rosen,* 523 F.2d 1136 (D.C.Cir.1975), for the redacted documents. The Department moved for summary judgment. It supported its motion with the declaration of Linda A. Wood, an EOUSA paralegal, concerning EOUSA's processing of Steinberg's request, the declaration of Steven Auerswald concerning the FBI's search, and the declaration of Maurice Hurst concerning the classified material that the FBI had excised from the released documents.

After examining *in camera* unredacted copies of the documents released to Ms. Steinberg and the Department's *Vaughn* index, the district court on September 30, 1992, denied appellant's motion to compel and entered summary judgment for the Department. The court found the searches adequate, stating that "the record discloses an informed, detailed search of likely sources, the accuracy of which was confirmed by duplicate records uncovered through the Executive Office of U.S. Attorneys ("EOUSA") headquarters indices." (As noted above, however, the duplicates were located through FBI headquarters, not EOUSA.) The court did not address the EOUSA search, other than to hold that the FBI was not required to retrieve the documents transferred to Virginia from the U.S. Attorney's Office in Boston.

Turning to the released documents, the court upheld the FBI's reliance on FOIA exemption 1 to withhold classified information, rejecting Steinberg's argument that mere identification of the documents by number and date was insufficient:

> the very nature of the underlying materials, ... which allegedly involve assassination of a prime minister of a friendly country, implicate international security concerns sufficient on their face to justify classification given an apparent two-way exchange of information with another government concerning a suspected assassin.

The court also upheld the FBI's reliance on exemptions 2, 7(C), and 7(D). Notice of this appeal followed on November 30, 1992.

On May 24, 1993, the Supreme Court in *Dep't. of Justice v. Landano,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993), rejected the position that confidentiality is "inherently implicit" in the context of all criminal investigations, *see Dow Jones v. Dep't. of Justice,* 917 F.2d 571, 576 (D.C.Cir.1990), and

instead required law enforcement agencies seeking to withhold material under FOIA exemption 7(D) to make particularized *Vaughn* submissions establishing confidentiality. *Id.* —— U.S. at ——–——, 113 S.Ct. at 2023–24. Realizing it had made no such showing in this case, the government on November 26, 1993 moved for voluntary remand of the exemption 7(D) issue. We denied the motion. Citing the government's six-month delay in seeking remand, we ruled that resolution of the *Landano* issue should await disposition of this appeal.

## II. Discussion

On appeal, Ms. Steinberg argues that the district court erred in granting summary judgment to the Department on the adequacy of the searches and the propriety of the FBI's withholdings. With respect to her EOUSA request, appellant argues that the declaration supporting the Department's summary judgment motion ("Wood Declaration") failed adequately to specify the manner in which the search was conducted, and that the preparer of the declaration lacked sufficient personal knowledge of the facts sworn to therein. She also alleges that the existence of other responsive documents creates a genuine issue of material fact regarding the adequacy of the search.

Moving to the FBI search, Steinberg asserts that a genuine issue of material fact exists regarding the existence of other documents that are responsive to her request. She also argues that the Bureau's *Vaughn* index was too general for the court to determine the applicability of FOIA exemptions 1 (classified material) and 7(D) (confidential sources). Initially, Ms. Steinberg also disputed the applicability of exemption 2 (internal rules and practices). At oral argument, however, counsel for both parties informed the court that the Department has agreed to release all documents that had previously been withheld pursuant to exemption 2. The Department's reliance on that exemption is therefore no longer before us. Appellant also does not object to the Department's invocation of exemption 7(C).

After setting forth the standard of review, we address the two searches in turn.

### A. *Standard of Review.*

■ The standard governing a grant of summary judgment in favor of an agency that claims it has fully discharged its FOIA disclosure obligations is well established. As we explained in *Weisberg v. Dep't. of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984), the agency must show, viewing the facts in the light most favorable to the requester, that there is no genuine issue of material fact. To meet this burden, "the agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Id.* The question is not

> whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.* The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Id.* (internal citations omitted). We review the issue *de novo* on the district court record. *Id.*

### B. *The Boston U.S. Attorney's Office Search.*

■ The Department concedes that "the district court did not specifically address the search for records of the United States Attorney's Office in Boston." Appellee's Br. at 6. Nevertheless, it urges us to uphold the adequacy of the search based on the record before us. We decline and remand the issue to the district court. Although we do not decide the adequacy of the search, Ms. Steinberg raises two issues that warrant the district court's attention on remand.

First, the Wood Declaration, on which the Department based its motion for summary judgment as to the EOUSA, is so general as to raise a serious doubt whether the Boston USA's Office conducted a reasonably thorough search of its records. While the document describes in general how the EOUSA processed appellant's FOIA request, it fails

to describe in any detail what records were searched, by whom, and through what process. *See Weisberg v. Dep't. of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment).

Pressed at oral argument for a description of the mechanics of the search, counsel for the Department pointed primarily to the conclusory and unilluminating sentence, "EOU-SA contacted the [Boston] United States Attorney's Office and was informed that no records responsive to the request had been located." Wood Decl. at 2. In addition, counsel suggested that the Wood Declaration's description of an interview with AUSA John Markham provided further evidence of an adequate search. Markham, who had participated in a prior criminal investigation of LaRouche, informed EOUSA that the Boston USA's Office had provided copies of source material to Swedish authorities, and that it did not retain copies in its files. According to Markham, the originals were returned to the FBI, which later released them to the Commonwealth of Virginia for use in state prosecutions involving the LaRouche organization. While the Wood Declaration describes Markham's recollections with particularity, we leave it for the district court to decide whether they are an adequate substitute for a search.

Second, Steinberg presented affidavits to the district court that may raise issues of material fact regarding the existence of documents that are responsive to her request. For example, the affidavit of John Russell, a Senior Assistant Attorney General for the Commonwealth of Virginia, states that some, *but not all,* of the LaRouche case file materials were returned to Virginia by the Boston USA's Office. In addition, appellant submitted a response to an interrogatory in another civil case involving LaRouche in which a member of the Boston USA's Office indicated that no original records, *only copies,* were transferred to Virginia. None of this, of course, establishes the existence of any relevant documents, and "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1201 (D.C.Cir.1991). At the least, however, the evidence presented appears to contradict assertions in the Wood Declaration and, therefore, warrants an explicit finding on the part of the district court as to the adequacy of the search of the Boston USA's Office.

C. *The FBI Search.*

■ 1. *Adequacy.* The declaration of Steven Auerswald describes how the FBI conducted its search. Notably more detailed than the Wood Declaration, it describes with particularity the files that were searched, the manner in which they were searched, and the results of the search. Based on this affidavit, the district court concluded that "the record discloses an informed, detailed search of likely sources.... There is no doubt about completeness." Memorandum at 3. Appellant nonetheless complains that the FBI failed to examine nineteen documents and six files that were cross-referenced in several of the disclosed documents.

We are not persuaded by appellant's argument. As the district court noted, the FBI was involved in several ongoing investigations of the LaRouche organization. It should therefore come as no surprise that other LaRouche documents and files were cross-referenced in the documents that were produced. But mere reference to other files does not establish the existence of documents that are relevant to appellant's FOIA request. If that were the case, an agency responding to FOIA requests might be forced to examine virtually every document in its files, following an interminable trail of cross-referenced documents like a chain letter winding its way through the mail. As FOIA clearly does not impose this burden upon federal agencies, we uphold the district court's grant of summary judgment to the government on the adequacy of the FBI's search.

■ 2. *Exemption 1—Classified Material.* The FBI withheld portions of three doc-

uments pursuant to FOIA exemption 1, which allows an agency to withhold records "specifically authorized under criteria established under an Executive order to be kept secret in the interest of national defense or foreign policy and ... are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Appellant claims that the district court had no way of assessing the appropriateness of the FBI's reliance on this exemption because the court did not examine unredacted copies of the documents, and because the Department's *Vaughn* index described the documents only by number and date.

We uphold the application of exemption 1. Appellant is mistaken that the district court did not examine unredacted copies of the three documents. *See* Memorandum at 1 ("the court has conducted an *in camera* inspection of the full text of the documents released to plaintiff in redacted form"). As the three documents subject to exemption 1 were among the eighteen documents released by the FBI, we must assume that the district court examined them. In addition, the Hurst Declaration provides a full and fair explanation for the invocation of exemption 1 as to each of the three documents.

### III. CONCLUSION

For the foregoing reasons, we remand this case to the district court to reassess the adequacy of the Boston United States Attorney's Office's response to appellant's FOIA request in light of the issues we have raised today, and we now accept the Department's invitation to remand the issue of its reliance on FOIA exemption 7(D) for further consideration under the standard announced in *Dep't. of Justice v. Landano,* — U.S. —, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). In all other respects, the district court's ruling is affirmed.

*So ordered.*